# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

FRANKLIN M. BEDFORD,                      )
                                          )
     Plaintiff,                          )
                                          )
v.                                        )                    CV620-009
                                          )
DOE MEDICAL CONTRACTOR, et al.,           )
                                          )
     Defendants.                         )

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

Proceeding *pro se* and *in forma pauperis* plaintiff brings this 42 U.S.C. § 1983 complaint alleging deprivation of medical care.  The Court now screens plaintiff's complaint under 28 U.S.C. § 1915A.[1]

---

[1]   The Prison Litigation Reform Act (PLRA) requires federal courts to conduct an early screening in all civil cases of any complaint in which a prisoner seeks redress from a government entity or official.  *See* 28 U.S.C. § 1915A.  The purpose of the early screening is to "identify cognizable claims" in the prisoner's complaint and to dismiss any claims that: (1) are frivolous; (2) are malicious; (3) fail to state a claim upon which relief can be granted; or (4) seek monetary relief from a defendant immune from such relief.  *Id*. Similarly, 42 U.S.C. § 1997e(c)(2) allows the Court, under the same four standards for dismissal listed in § 1915A, to dismiss any prisoner suit brought "with respect to prison conditions."  Therefore, the Court examines plaintiff's complaint to determine whether he has stated a claim for relief under 42 U.S.C. § 1983.  The Court screens plaintiff's initial complaint because defendant's amended complaint purports to be a class action.  Plaintiff is not entitled to proceed with a class action.  *See infra*, note 5.  There may well be allegations included in the class action "amended complaint" which plaintiff wishes to apply to his individual claims.  If so, plaintiff should include those in his amended complaint.

## BACKGROUND

Plaintiff alleges that in March of 2018, the Georgia Prison System replaced prisoner's shoes with "Crocs." Doc. 1 at 7. He contends that these replacement shoes provide no support, wear out quickly, and are not replaced when they do wear out, forcing prisoners to continue walking in unusable shoes. *Id.* Plaintiff specifically alleges that due to his uncontrolled diabetes— which he claims was caused by his prison diet and lack of insulin—have caused peripheral neuropathy causing extreme pain which is exacerbated by the Crocs. *Id.* at 8.

On May 21, 2019, plaintiff notified prison officials of his high sugar levels and attempted to visit a doctor to discuss possible treatment. *Id.* at 9-10. He claims that he was refused a doctor visit. *Id.* at 10. Instead, he was provided with a shot of an unknown substance. *Id.* On June 12, 2019, plaintiff requested a "soft shoe"[2] due to his peripheral neuropathy, but was denied a replacement for his Crocs because the prison considers them "soft shoes." *Id.* at 10-11.

He made further sick call requests on August 5, 2019, November 14, 2019, and November 18, 2019, where he was denied a personal screening and

---

[2] The Court assumes that this term "soft shoe" is a term of art meant to encompass a specific medical shoe for diabetics.

was instead charged for, and apparently received (the complaint is difficult to follow), some kind of chronic diabetes care. *Id.* at 11.  Apparently upset with this treatment, plaintiff decided to stop taking insulin in a (successful) bid to force prison doctors to prescribe other medications. *Id.* at 11-12.  Around the same time, he requested additional pain medication for his neuropathy but was denied that treatment after being told that the medication he was currently taking was appropriate. *Id.* at 12.  He also filed an Americans with Disabilities Act Grievance in December of 2019, although at the time of filing this complaint he acknowledges he has not received a response. *Id.* at 12-13.

Plaintiff claims that defendant "Doe Medical Contractor" is responsible for policy lacking in individualized care which has been put in place causing serious diabetes problems.  Doc. 1 at 14.  He claims that defendant Dr. Occhipinti refused him treatment. *Id.*  He claims that defendant Lewis is responsible for his ailments due to her position as Department of Corrections Medical Director. *Id.* at 14-15.  He claims that defendant Dozier is responsible insofar as his office instituted the Croc's policy. *Id.* at 15.  He requests that the Court order the immediate individualized care of all prison diabetics, "diabetic medical shoes" for all incarcerated diabetics, provision of adequate nutrition, provision of food to diabetics when dispensed insulin, and unspecified money damages. *Id.* at 18-19.

## ANALYSIS

Liberally construing plaintiff's complaint, he attempts to allege a claim for denial of medical care in violation of the Eighth Amendment.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (the Constitution imposes a duty upon prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care.").  "[N]ot every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotes and cite omitted).   Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A prisoner must show that: (1) he had a serious medical need; (2) defendants were deliberately indifferent to that need; and (3) some injury was caused by defendants' indifference.  *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).  The standard for proving a "serious medical need" is quite exacting.  The Court of Appeals defines it as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010).  Whether a serious medical need existed is an objective standard.  *Miller v. Turner*, 445 F. App'x 159, 161-62.  However,

4

whether defendants were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). To allege deliberate indifference a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans*, 626 F.3d at 564 (citations omitted) (alteration in original).

As an initial matter, Bedford's claims against defendants Lewis, Dozier, and Doe Medical Contractor in their capacities as "supervisors" cannot proceed. Neither can be sued because § 1983 claims require an allegation of a causal connection between a defendant's acts or omissions and the alleged constitutional deprivation.[3] *See Zalter v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Such claims cannot be based upon theories of *respondeat superior* or vicarious liability. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325; *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Bedford's complaint does not include any allegations that Lewis or Dozier had personal knowledge of the various violations he asserts. The lack of such allegations is fatal to his claim. *See, e.g.,*

---

[3] Although plaintiff does name each of these individuals in their official capacities, his claim would still fail.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim upon which relief can be granted.)  Moreover, their positions as supervisors do not support claims against them in their official capacity either.  *See Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) ("As a supervisory official, Sheriff Johnson is only liable under § 1983 for the unconstitutional acts of his subordinates if he personally participated in the allegedly unconstitutional conduct, or his actions were causally connected to the alleged constitutional deprivation.").

However, supervisors may be held liable when they

either directly participated in the unconstitutional conduct or [] a causal connection exists between the supervisor's actions and the alleged constitutional violation.

The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Keith v. DeKalb Cty., Georgia*, 749 F.3d 1034, 1047-48 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal citations omitted) (alterations in original). "The deprivations that constitute

widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v.* Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)(citations and quotations omitted).

Whether there was a sufficient pattern or practice evidencing a denial of medical care (and thus exposing the listed supervisors to liability under § 1983) is another question. Plaintiff does allege a widespread policy of treating every diabetic the same way. However, it is not apparent from the complaint that there was "any prior incident that would have given the[] defendants notice of a need for additional or different training." *Bunyon v. Burke Cty.*, 306 F. Supp. 2d 1240, 1259 (S.D. Ga. 2004). While, "it is not necessary to show that the policy in question resulted in a prior denial of medical care," *id.* (*citing Anderson v. City of Atlanta*, 778 F.2d 678, 686 n. 11 (11th Cir. 1985)), the policymakers must have had "actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens," *City of Canton, Ohio*, *v. Harris*, 489 U.S. 378, 396 (1989) (O,Connor, J., concurring in part). Plaintiff's allegations here do not reach that level, at least not yet. Plaintiff has alleged that all diabetics get treated similarly, but he has not yet been able to allege that this treatment is the cause of his (or indeed anyone else's) suffering. Nor

has he provided any specifics on the *type* of similar treatment they receive: i.e., do all inmates receive the same insulin, or are they all merely provided treatment at the same time through the same program?   Each of these questions affect the Court's evaluation of the complaint and the failure to include answers is detrimental to plaintiff's complaint—at least as far as the supervisors are concerned.

Unfortunately, plaintiff's complaint also does not state a claim against the treating individuals.  Assuming, *arguendo*, that he alleges a serious medical need, none of the treating individuals acted with indifference.  Plaintiff alleges that he repeatedly sought care and received it, although he disagreed with the treatment provided.  He requested different soft shoes for his neuropathy, but was denied because the Crocs he received were soft shoes according to the physician.  Though denied a personal diabetes screening with the physician, he appears to have always been able to access a medical provider or some kind of treatment (albeit unknown) upon request.  Plaintiff is not entitled to dictate (although he appears to have attempted to do so here) the terms of his treatment.  *See, e.g., Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [plaintiff/inmate] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); *see also Estelle*, 429 U.S. at 107 (medical decision to not order

tests, despite plaintiff's request, was not offensive to the constitution).  Thus, the physician's determination that he was not entitled to different pain medication, shoes, or type of treatment is not deliberate indifference. Moreover, for a number of these occasions, he does not allege that he suffered any harm.  For example, while he requested insulin or different treatment numerous times, he never alleges that the treatment (or non-treatment as the case may be) resulted in injury.

By contrast, he does allege some injury from not receiving food with his insulin.  Specifically, he claims that this practice has made his diabetes worse and caused painful neuropathy.  However, he never alleges that he made any of the defendants aware that the lack of food was exacerbating his diabetes symptoms.  In the absence of actual knowledge, none of the defendants currently named can be held responsible under §1983.[4]

---

[4] To be sure, plaintiff does allege that he filed an A.D.A. grievance regarding the relationship between his diet and his neuropathy.  Doc. 1 at 13.  However, he does not tell the Court who was aware of this complaint and thus he cannot meet the actual knowledge requirement. Moreover, it appears that the grievance he discusses may not be fully exhausted and thus may not be ripe for review. *See id.*  (As of this date, there has been no response from the "A.D.A." filing.").  Insofar as this A.D.A. filing constitutes a grievance system, "the PLRA exhaustion requirement requires proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  Failure to exhaust administrative remedies is an affirmative defense, and "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Normal pleading rules still apply to prisoner suits, however.  *Id.* at 214–15.  When a prisoner's failure to exhaust is apparent on the face of the Complaint, making it clear that the prisoner cannot state a claim for relief, dismissal is warranted under 28 U.S.C. § 1915A.  *Id.* at 214–15; *see also Clark v. State of Ga. Pardons and*

Plaintiff's complaint fails to state a claim, and as a result should be dismissed.  However, a *pro se* plaintiff is granted at least one opportunity to amend.  *Jenkins v. Walker*, 620 F. App'x 709, 711, (11th Cir. 2015) (*citing Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en banc)) ("When a more carefully drafted complaint might state a claim, a district court should give a pro se plaintiff at least one chance to amend the complaint before the court dismisses the action."); *see also* Fed. R. Civ. P. 15(a)(2)(courts should grant leave to amend "freely . . . when justice so requires").  That is the case here.  Accordingly, plaintiff shall have **thirty days** from the date of this Order to file an amended complaint addressing the errors detailed above.   Plaintiff is warned that any amended complaint will supersede the original complaint and therefore must be complete in itself.  *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint"); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6

---

*Paroles Bd.*, 915 F.2d 636, 640 n. 2 (11th Cir. 1990) ("When the defense is apparent from the face of the complaint or the court's records, courts need not wait and see if the defense will be asserted in a defensive pleading.").   Regardless, since the Court determines that plaintiff's complaint is currently insufficient to state a claim, the Court makes no determination on exhaustion at this time.

(11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleadings").  Failure to file an amended complaint will result in a recommendation of dismissal.

## CONCLUSION

Accordingly, plaintiff is **DIRECTED** to file an amended complaint within thirty days from the date of this order.  Because plaintiff's complaint as pled fails to state a claim, his Motion to Certify Class and Motion for Immediate Injunctive Relief should be **DISMISSED AS MOOT**.[5]  Meanwhile, it is time for plaintiff to pay his filing fees.  Plaintiff's prisoner trust fund account statement reflects $0 in average monthly deposits and a $0 average monthly balance. Based upon his furnished information, he does not owe an initial partial filing fee.  See 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when

---

[5] Plaintiff's amended complaint (which includes his claims against Bob Barker and Bob Barker Corporation for provisioning the Crocs) purports to be a class action.  Doc. 11 at 2. As such, it generally alleges a host of complaints about the prison in its entirety.  However, as a *pro se,* incarcerated, plaintiff, he is generally not entitled to proceed on behalf of a class without representation and his complaint is therefore deficient.  *Wallace v. Smith,* 145 F. App'x 300, 302 (11th Cir. 2005) (*per curiam*) (affirming district court's dismissal brought by pro se litigant proceeding IFP).  Likewise, plaintiff's Motion for Injunctive Relief includes a litany of complaints completely different from those alleged in his initial complaint including loss of access to electronic databases, heat, spoiled food, and lock down procedures.  As stated before, the Court will allow plaintiff to amend his complaint. However, if Plaintiff wishes to proceed with the myriad claims he lists, he is cautioned that any complaints he has regarding the prison should be included in his amended complaint, must be exhausted, and must detail his individual claims. Failure to do so will result in a recommendation of dismissal.

11

funds exist," under a specific 20 percent formula) (emphasis added).
However, the custodian also shall set aside 20 percent of all future deposits to
the account, then forward those funds to the Clerk each time the set aside
amount reaches $10, until the balance of the Court's $350 filing fee has been
paid in full.

In the event plaintiff is transferred to another institution, plaintiff's
present custodian shall forward a copy of this Order and all financial
information concerning payment of the filing fee and costs in this case to
plaintiff's new custodian. The balance due from the plaintiff shall be collected
by the custodian at his next institution in accordance with the terms of this
Order. A copy of this Order and a copy of the Consent to Collection of Fees
from Trust Account shall be served upon plaintiff and his current custodian.
The payment portion of this Order is to be implemented immediately, as it is
not subject to the adoption provision of Fed. R. Civ. P. 72(b).

This Report and Recommendation (R&R) is submitted to the district
judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this
Court's Local Rule 72.3. Within 14 days of service, any party may file written
objections to this R&R with the Court and serve a copy on all parties. The
document should be captioned "Objections to Magistrate Judge's Report and

Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

SO ORDERED AND REPORTED AND RECOMMENDED, this 28th day of July, 2020.

Christopher L. Ray
United States Magistrate Judge
Southern District of Georgia